CASE NO. 12-1197

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| UNITED STATES OF AMERICA, | ) |
|---|---|
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| JAVIER TORRES, | ) |
| | ) |
| Defendant-Appellant. | ) |

On Appeal from the United States District Court
for the District of Colorado
The Honorable Philip A. Brimmer, District Judge
D.C. No. 11-cr-00492-PAB

## APPELLANT'S OPENING BRIEF

RAYMOND P. MOORE
Federal Public Defender

VERONICA S. ROSSMAN
Assistant Federal Public Defender
Appellate Division
633 - 17th Street, Suite 1000
Denver, Colorado 80202
(303) 294-7002

Oral Argument is not requested.

SCANNED PDF FORMAT ATTACHMENTS ARE INCLUDED
WITH DIGITAL SUBMISSION SENT VIA CM/ECF SYSTEM

AUGUST 15, 2012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PRIOR OR RELATED APPEALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

COMBINED STATEMENT OF THE CASE AND FACTS. . . . . . . . . . . . . . . . 1

    I.      Mr. Torres's Background.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    The Charges, Mr. Torres's Guilty Plea, and the Plea Agreement.. . . . 4

    III.   Sentencing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.     The Advisory Guideline Calculation... . . . . . . . . . . . . . . . . . 5

          B.     Mr. Torres's Sentencing Statement... . . . . . . . . . . . . . . . . . . 6

          C.     The Sentencing Hearing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

               1.     The government, the defense, and probation all agreed that Mr. Torres's sentence should be 33 months.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

               2.     Mr. Torres's allocution.. . . . . . . . . . . . . . . . . . . . . . . . . 7

          D.     The Sentencing Decision... . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.  Mr. Torres's 51-Month Sentence Is Substantively Unreasonable.. . . . . . . . 9

   A.  Substantive reasonableness review, generally. . . . . . . . . . . . . . . . . . . 9

   B.  Substantive reasonableness review is not an empty gesture.. . . . . . . 11

   C.  The district court's hyper-technical allegiance to the advisory
       guideline range resulted in a substantively unreasonable sentence
       that failed to account for numerous mitigating factors.. . . . . . . . . . . 11

       1.  The district court unduly discounted the comparatively
           benign nature of Mr. Torres's offense and his prior
           nonviolent felony conviction... . . . . . . . . . . . . . . . . . . . . . . . . 12

       2.  The district court unduly discounted Mr. Torres's motives
           for returning to the United States.. . . . . . . . . . . . . . . . . . . . . . 16

   D.  The sentence imposed violates the parsimony principle.. . . . . . . . . . 18

CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

STATEMENT AS TO ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 19


ATTACHMENTS:

Judgment in a Criminal Case,
     dated May 9, 2012.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Transcript of Sentencing Hearing,
     held May 4, 2012.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# TABLE OF AUTHORITIES

PAGE

**CASES**

*Gall v. United States,*
552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

*Koon v. United States,*
518 U.S. 81 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pepper v. United States,*
131 S. Ct. 1229 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rita v. United States,*
551 U.S. 338 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Townsend v. Burke,*
334 U.S. 736 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Amezcua-Vasquez,*
567 F.3d 1050 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Booker,*
543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*United States v. Carty,*
520 F.3d 984 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Chavez-Suarez,*
597 F.3d 1137 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Fernandez,*
443 F.3d 19 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Jimenez-Beltre,*
 440 F.3d 514 (1st Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Kikamura,*
 918 F.2d 1084 (3rd Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Kristl,*
 437 F.3d 1050 (10th Cir 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Martinez-Barragan,*
 545 F.3d 894 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Olsen,*
 519 F.3d 1096 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Rose,*
 185 F.3d 1108 (10th Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Sayad,*
 589 F.3d 1110 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*United States v. Sells,*
 541 F.3d 1227 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Talley,*
 431 F.3d 784 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Todd,*
 515 F.3d 1128 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# STATUTES & RULES

8 U.S.C. § 1326. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 9-13, 16, 18

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# GUIDELINES

U.S.S.G. §2A2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.G. §2D1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.G. §3E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S.S.G. §2G2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.G. §2K1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.G. §2K2.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.G. §2L1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12, 13

# OTHER

1 Wayne R. LaFave,
  Substantive Criminal Law § 5.3 (2d ed. 2003). . . . . . . . . . . . . . . . . . . . . . . . 18

Bloom, Craig A.
  *Square Pegs and Round Holes: Mexico, Drugs, and International Law*,
  34 Hous. J. Int'l L. 345 (Spring 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Garcia, Sergio
  *Asylum for Former Mexican Police Officers Prosecuted by the Narcos*,
  31 Boston College Third World L. J. 245 (2011). . . . . . . . . . . . . . . . . . . . . . 2

Travel Warning, U.S. Dept. of State, Bureau of Consular Affairs,
  (last updated February 8, 2012; last visited August 15, 2012)
  http://travel.state.gov/travel/cis_pa_tw/tw/tw_5665.html. . . . . . . . . . . . . . . 2

# PRIOR OR RELATED APPEALS

None.

# STATEMENT OF JURISDICTION

Mr. Javier Torres pled guilty in the United States District Court for the District of Colorado to one count of illegally re-entering the United States after a deportation subsequent to an aggravated felony conviction. (vol. 1 at 12; vol. 3 at 27).[1] The district court had jurisdiction under 18 U.S.C. § 3231. On May 9, 2012, the district court entered judgment. (vol. 1 at 63) (Attachment 1). The notice of appeal was filed on the same day judgment was entered. (*Id.* at 71). This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUE

**Is Mr. Torres's 51-month sentence substantively unreasonable?**

# COMBINED STATEMENT OF THE CASE AND FACTS

## I.     Mr. Torres's Background.

Mr. Torres was born in Michoacán, Mexico in 1983. (vol. 2 at 5). He and his four siblings grew up in poverty. (*Id.* at 14). Luciano, Mr. Torres's father, farmed beans and corn on rented land. (*Id.*). Luciano was a hard worker, but he

---

[1] Record citations indicate the volume of the record filed in this Court and the page number on the bottom, right-hand side of the page.

drank and often spent what he earned on liquor. (*Id.*). Elia, Mr. Torres's mother, stayed at home with the children. (*Id.*). The family lived in a simple structure made of cardboard and adobe; they had no telephone or running water. (*Id.*; *see also id.* at 13). Despite these hardships, Mr. Torres stayed in school. (vol. 2 at 15). It was not until Luciano began to suffer severe complications from diabetes that Mr. Torres was forced to leave school and support his family. (*Id.* at 7).

Mr. Torres worked for the municipal police in Michoacán as a driver. (vol. 2 at 7). Michoacán is one of the most violent states in Mexico.[2] The U.S. Department of State has reported that "[a]ttacks on Mexican government officials, law enforcement and military personnel, and other incidents of [drug]-related violence, have occurred throughout Michoacán."[3] The drug violence against Mexican police in particular is "persistent and bloody."[4] Mexican law enforcement officers are recruited to join the drug cartels and those who refuse "are targeted and remain under threat."[5] As one scholar has described: "The Narcos send a clear

---

[2] *See* Craig A. Bloom, *Square Pegs and Round Holes: Mexico, Drugs, and International Law*, 34 Hous. J. Int'l L. 345, 368-69 (Spring 2012).

[3] http://travel.state.gov/travel/cis_pa_tw/tw/tw_5665.html

[4] Sergio Garcia, *Asylum for Former Mexican Police Officers Prosecuted by the Narcos*, 31 Boston College Third World L. J. 245, 246 (2011).

[5] *Id.* at 259.

message to honest law enforcement officers: either join us or we will kill you."[6]

The widespread drug violence and corruption in Michoacán directly impacted Mr. Torres. "There is a lot of pressure to work for the drug cartels," Mr. Torres explained, and "they threatened you if you said no." (vol. 2 at 26). Mr. Torres consistently refused to associate with the cartels. He fled Mexico in 2003 to find work in the United States but was removed in 2006. (*Id.* at 14). Prior to his removal, Mr. Torres was convicted of possession with intent to distribute a controlled substance. (*Id.* at 7, 10). He was sentenced to 75 days in jail and four years probation. (*Id.*). Mr. Torres returned to the United States illegally in 2008 and pled guilty to violating his probation. (*Id.*). He was sentenced to two years in prison and then removed to Mexico in 2009. (*Id.*).

When Mr. Torres returned to Mexico, he started a family and attempted to make a life for himself. But in May of 2011, Mr. Torres's worst fears were realized when his brother was assassinated by the Mexican drug cartel. (vol. 3 at 47). Mr. Torres, now a husband and the father of a baby girl, moved his family to Tijuana, but the situation there was no better. "There is no work [in Tijuana] except with drugs," Mr. Torres explained. (vol. 2 at 26). After a few months in Tijuana, Mr.

---

[6] *Id.*

Torres's wife Liduvina and their baby Maria moved back to Michoacán. (*Id.*). Still expected to provide for his family, Mr. Torres re-entered the United States in 2011, after an uncle in Colorado agreed to pay his passage. (*Id.* at 33). Immigration agents encountered Mr. Torres at the Denver County Jail in November 2011, and he was charged in this case. (*Id.* at 26).

## II.     The Charges, Mr. Torres's Guilty Plea, and the Plea Agreement.

The government charged Mr. Torres in a one-count Information with illegally re-entering the United States after deportation subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). (vol. 1 at 7). Mr. Torres pled guilty pursuant to a plea agreement. (vol. 1 at 12; vol. 3 at 27).

In the plea agreement, the government agreed to a three-level reduction in offense level for Mr. Torres's acceptance of responsibility and an additional one-level reduction in offense level for Mr. Torres's appeal waiver. (vol. 1 at 13). While Mr. Torres's prior conviction technically qualified for a 16-level specific offense enhancement, the government believed that the sentencing range resulting from a 12-level enhancement resulted in a sufficient sentence under 18 U.S.C. § 3553(a). (*Id.* at 19). Finally, as part of the plea agreement, Mr. Torres waived his

right to appeal unless, among other things, the district court determined that "the offense level is greater than 17 and impose[d] a sentence based upon that offense level determination." (vol. 1 at 14). In the final analysis, the guideline range contemplated in the plea agreement was 33-41 months. (*Id.* at 20). The government agreed to recommend a sentence at the lowest end of this adjusted range. (*Id.* at 13).

### III. Sentencing.

### A. The Advisory Guideline Calculation.

Prior to sentencing, a probation officer prepared a presentence report that included calculation of an advisory sentencing guideline range. The probation officer first calculated the total offense level, as follows:

| | |
|---|---|
| 8 | (base offense level; *see* U.S.S.G. § 2L1.2) |
| +16 | (specific offense characteristic; *see* U.S.S.G. § 2L1.2(b)(1)(A)(vi)) |
| = 24 | (adjusted offense level) |
| - 3 | (acceptance of responsibility; *see* U.S.S.G. § 3E1.1(b)) |
| = 21 | (total offense level) |

(vol. 2 at 8).

The 16-level enhancement was based on Mr. Torres's 2005 nonviolent felony drug offense. (vol. 2 at 27). With respect to his criminal history score, Mr. Torres's two prior drug convictions produced six of his criminal history points. (*Id.* at 32 ). Another two points were added because Mr. Torres was on parole at the time of the instant offense. (*Id.* at 13). Together, these eight points placed Mr. Torres in Criminal History Category IV, and resulted in an advisory Guidelines range of 57-71 months. (*Id.* at 40). The probation officer, however, determined that a sentence of 33 months, as contemplated by the plea agreement, best complied with §3553(a). (*Id.*). Neither the government nor Mr. Torres filed objections to the presentence report.

### B.    Mr. Torres's Sentencing Statement.

Mr. Torres submitted a sentencing statement requesting the district court to impose the 33-month sentence recommended in the plea agreement. (vol. 1 at 50). Mr. Torres emphasized the broad "range of sentencing options" since *United States v. Booker*, 543 U.S. 220 (2005), and maintained that a detailed analysis of the § 3553(a) supported a 33-month sentence in his case. (*Id.*).

### C. The Sentencing Hearing.

#### 1. The government, the defense, and probation all agreed that Mr. Torres's sentence should be 33 months.

The district court first granted the government's request for a one-level departure in offense level based on Mr. Torres's appellate waiver. (vol. 3 at 36) (*see* Attachment 2). Next, the district court heard from defense counsel as to why a further reduction was warranted. Defense counsel, supported by the government and probation, argued in favor of a 12-level enhancement instead of a 16-level increase given the nature of the nonviolent prior felony conviction which drove Mr. Torres's total offense level. (*Id.* at 37-47). The government agreed that Mr. Torres was technically subject to a 16-level enhancement under the express terms of § 2L1.2 but contended that a 12-level enhancement was appropriate on the facts of this case. (Id at 46).

#### 2. Mr. Torres's allocution.

Mr. Torres addressed the court before sentence was imposed. "Your Honor, I would like to tell you that I accept responsibility for what I did," Mr. Torres began, "I am guilty of being here in the United States illegally." (vol. 3 at 47). Mr. Torres then explained why he continued to re-enter the United States. "Part of the reason I came back is my father is ill. He suffers from diabetes. My brother

was assassinated. These are just a couple of the problems that I have at home in Mexico." (*Id.*). Finally, Mr. Torres apologized for his illegal reentry. "I am not coming back to this country," Mr. Torres promised. "I am looking forward to seeing my parents again and being with my wife and family." (*Id.*).

### D. The Sentencing Decision.

The district court first calculated the guideline range. "The Court finds that pursuant to the guidelines, the offense level is 21 and the defendant's criminal history is four which results in a range of imprisonment of 57 to 71 months." (vol. 3 at 48). The district court then granted the government's request for a one-level downward departure from the applicable offense level based upon Mr. Torres's waiver of certain appellate rights. (*Id.*). With an adjusted total offense level of 20, Mr. Torres's guideline imprisonment range was 51 to 63 months. (*Id.*). The district court refused to vary from this advisory guideline range, and rejected "all of the grounds that have been stated in the motion for a variant sentence." (vol. 3 at 55). Mr. Torres was sentenced to 51-months' imprisonment.(*Id.*). This timely appeal followed.[7]

---

[7] The conditional appellate waiver in the plea agreement does not preclude Mr. Torres's appeal of his sentence. Because the district court determined that Mr. Torres's offense level is greater than 17 and imposed a sentence based upon that offense level determination, *see* vol. 1 at 14, Mr. Torres may now appeal his sentence

**SUMMARY OF ARGUMENT**

Mr. Torres's sentence is substantively unreasonable, based on the particular facts and circumstances of his case, and as measured by the sentencing goals of 18 U.S.C. § 3553(a). Mr. Torres presented the district court with numerous mitigating factors, uncontested by the government and probation, which warranted a sentence below the advisory guideline range. The district court, however, placed undue weight on the sentencing guidelines, and sentenced Mr. Torres as if there were no mitigating factors. Accordingly, Mr. Torres's substantively unreasonable sentence should be vacated and his case remanded for re-sentencing.

**ARGUMENT**

**I.      Mr. Torres's 51-Month Sentence Is Substantively Unreasonable.**

      **A.      Substantive reasonableness review, generally.**

This Court reviews the length of Mr. Torres's sentence for substantive reasonableness. Review for substantive reasonableness is essentially an abuse of discretion standard. *United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009). Although this Court does not reverse simply because it would have imposed a different sentence, substantive reasonableness review, conducted through the

---

in accordance with the terms of his plea agreement. (*Id.*).

9

prism of deference, extends to the weight that the district court places on § 3553(a) factors and to the balance it strikes among them. *See Gall v. United States*, 552 U.S. 38, 56-60 (2007) (holding that Gall's sentence was substantively reasonable only after reviewing the weight the district court had assigned to various sentencing factors as well as its decision that the § 3553(a) factors, as a whole, justified the sentence). If "the balance struck ... among the[se] factors" is wrong, this Court may hold the sentence to be substantively unreasonable. *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008).

Unlike in some circuits, in this circuit a within-guidelines sentence is presumed to be reasonable. *Compare United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir 2006) (adopting presumption of reasonableness) *with United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (rejecting presumption of reasonableness); *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (en banc) (same); *United States v. Fernandez*, 443 F.3d 19, 27 (2nd Cir. 2006) (same); *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (same). The presumption is "a deferential standard ... [the defendant] ... may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in §3553(a)." *Kristl*, 43 F.3d at 1054; *see also Rita v United States*, 551 U.S. 338, 347 (2007) (noting the presumption of reasonableness is not a "strong" presumption).

**B. Substantive reasonableness review is not an empty gesture.**

"In sentencing, as in other areas, district judges at time make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur." *Rita*, 551 U.S. at 354. To date this Court has never reversed a within-Guidelines sentence as substantively unreasonable. *Compare, e.g., United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055-58 (9th Cir. 2009) (in illegal reentry case, fifty-two-month sentence was substantively unreasonable, even though it fell within the correctly calculated guideline range of forty-six to fifty-seven months). As this Court's and Supreme Court precedent instructs, Mr. Torres is entitled to meaningful appellate consideration of his substantive reasonableness claim to ensure that the district court has imposed a parsimonious sentence.

**C. The district court's hyper-technical allegiance to the advisory guideline range resulted in a substantively unreasonable sentence that failed to account for numerous mitigating factors.**

Section 3553(a) instructs a sentencing judge to "impose a sentence sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in the statute. 18 U.S.C. § 3553(a); *see Rita*, 551 U.S. at 348. To arrive at such a parsimonious sentence, a district court must make an

11

individualized assessment by considering the following factors, only one of which is the appropriate Guideline range. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment, (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. 18 U.S.C. § 3553(a)(1)-(2).

As explained below, Mr. Torres's sentence is substantively unreasonable because the district court "abused its discretion in weighing permissible § 3553(a) factors in light of the 'totality of the circumstances.'" *Sayad,* 589 F.3d at 1118 (quoting *Gall,* 552 U.S. at 51). The district court placed too much emphasis on the advisory guideline range, treating it as more than just an initial benchmark, and too little weight on the nature and circumstances of Mr. Torres's offense and his history and characteristics.

> **1. The district court unduly discounted the comparatively benign nature of Mr. Torres's offense and his prior nonviolent felony conviction.**

Mr. Torres's illegal reentry offense had only marginal relevance to his sentence. Instead, Mr. Torres's sentence was tethered to § 2L1.2, which creates a

scheme to triple the offense level (from 8 to 24) if the defendant had been previously removed following a conviction for any of several described felony offenses. *See* § 2L1.2(b)(1)(A). Defense counsel argued that the nature of Mr. Torres's prior drug crime should be factored into the sentencing calculus.

> I am not disputing that technically [Mr. Torres's] prior conviction qualified for the 16-level [enhancement under § 2L1.2(b)(1)(A)(vi)]....My argument is as part of the entire 3553 analysis, the prior isn't the same type of drug trafficking that we often see that gets the 16-level. [Mr. Torres] is not the person who is moving kilos of drugs or somebody who it's their second or third drug trafficking, so I submit this is a different scenario.

(vol. 3 at 44). The district court rejected this argument. Mr. Torres's prior conviction qualified him for the 16-level increase, the district court determined, so he should receive the enhancement. The district court's reasoning manifests a clear error in judgment for at least three reasons.

First, after *Booker*, district courts can no longer mechanically follow the Guidelines, as the district court did here. Instead, this Court has observed that the guideline range is only "the 'starting point and the initial benchmark' for any sentencing decision," *United States v. Todd*, 515 F.3d 1128, 1134 (10th Cir. 2008) (*quoting Gall*, 552 U.S. at 49). "[T]he Guidelines are indeed advisory," this Court has emphasized, "and constitute but one of many sentencing considerations." *United States v. Olsen,* 519 F.3d 1096, 1106 n. 11 (10th Cir. 2008).

Second, before mechanically applying the 16-level enhancement, the district court failed to duly consider the prior conviction that triggered it. This Court has held that "a downward variance may sometimes be warranted based on the relatively benign nature of a particular offense in comparison to other offenses triggering the same enhancement. Indeed, we have on occasion noted that the nature of a prior conviction may bear on the reasonableness of a sentence that is based on this sixteen-level enhancement." *United States v. Chavez-Suarez*, 597 F.3d 1137, 1138-1139 (10th Cir. 2010) (citing cases).

The 16-level enhancement in this case is based on Mr. Torres's prior conviction for possessing with intent to distribute less than 25 grams of cocaine. (vol. 2 at 11). For this offense, Mr. Torres was originally sentenced to 75 days in jail and four years probation. (This would have triggered only a 12-level enhancement). Mr. Torres was then deported. After reentering the United States, Mr. Torres pled guilty to violating his probation and was sentenced to two years' imprisonment, thus qualifying him for a 16-level enhancement. While the guideline attributed a heightened significance to the fact that Mr. Torres had a prior drug trafficking offense, the district court should have exercised its discretion to give that fact appropriate weight at sentencing.

Finally, the resulting advisory guideline range overstated the seriousness of Mr. Torres's offense and had a disproportionate impact on his sentence. Here, when comparing Mr. Torres's crime with other crimes that yield an adjusted offense level of 24, the illegal reentry guideline seems to lack any sense of logic or proportionality. For example, consider the following crimes which also yield an offense level of 24:

- Aggravated assault involving discharge of a gun and resulting in serious injury (§2A2.2);

- Distribution of 80-99 grams of heroin or 40-49 grams of methamphetamine (§2D1.1);

- Possession of images of child pornography involving a minor under 12 (§2G2.2);

- Possession of explosives by a person with two prior convictions for crimes of violence (§2K1.3(a)(1));

- Possession of 3 to 7 machine guns by a felon who has been convicted of a crime of violence (§2K2.1);

The foregoing are crimes involving dangerous public behaviors: drug dealing, actual and potential physical injury and/or death, and sexual victimization of children. Assigning the same offense level to illegal reentry as to the above-cited crimes is completely inconsistent with the goals of promoting respect for the law and imposing proportionate and just punishment.

By presenting these comparisons, Mr. Torres does not suggest that illegal reentry is not a serious crime. Rather, the above comparisons expose the fact that a "guidelines sentence" in this kind of case yields a result that is overly harsh when contrasted with guidelines for crimes that are factually more injurious or potentially injurious. Indeed, as this Court has previously observed, "Congress never intended ... for sentencing to become a hyper-technical exercise devoid of common sense." *United States v. Rose*, 185 F.3d 1108, 1110 (10th Cir.1999) (internal quotation marks omitted). The district court's refusal to vary from the advisory guideline range in this case, despite the true nature and circumstances of the offense, does not align with common sense or reflect a reasoned balancing of the § 3553(a) factors.

> ### 2. The district court unduly discounted Mr. Torres's motives for returning to the United States.

The district court, without basis, was not persuaded by Mr. Torres's fear of violence in his home country. (vol. 3 at 49). "To the extent the argument is one that he was trying the escape the situation that resulted in his brother's murder and the threats to him," the district court concluded, "it's not very persuasive. If you are trying to escape threats, probably Tijuana is the last place that you would

go." (*Id.*). The district court's assumptions about life in Mexico are unfounded and find no support in this record, which clearly demonstrates that Mr. Torres was pressured to join the drug cartels, refused to do so, remained under threat after his brother was murdered, and fled first to Tijuana, and then to the United States, to escape the violence. Mr. Torres has the right not to be sentenced on the basis of guesses and assumptions about his background. *See generally Townsend v. Burke*, 334 U.S. 736, 740-41 (1948).

Likewise, the district court, without basis, put no weight on the fact that Mr. Torres reentered the United States to provide for his family after his father became ill. "[The motion for a variant sentence] also mentions that his father was ill," the district court observed, "but once again, that in and of itself certainly doesn't justify a variant sentence in this case because that is a very common situation that someone would because of financial needs in his home country come to the United States to attempt to work." (vol. 3 at 50). The fact that one of Mr. Torres's motives for reentry may be "common" is no ground to wholly reject it. Rather, the sentencing judge has an obligation to consider "every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (quoting *Koon v. United States*, 518 U.S. 81,

17

113 (1996)).

Mr. Torres's sentence is too long because it does not meaningfully account for his personal history and characteristics - specifically, his reasons for fleeing Mexico and reentering the United States.  Mr. Torres's motives may not justify his offense, but they do mitigate its seriousness. *See* 1 Wayne R. LaFave, Substantive Criminal Law § 5.3(b) (2d ed. 2003) ("Motives are most relevant when the trial judge sets the defendant's sentence, and it is not uncommon for a defendant to receive a minimum sentence because he was acting with good motives, or a rather high sentence because of his bad motives."). The district court abused its discretion by putting no weight on these mitigating factors.

**D.     The sentence imposed violates the parsimony principle.**

The overarching directive of the federal sentencing statute is set out at its beginning: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set out in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Through this instruction, Congress embedded in federal sentencing legislation the principle of parsimony, the moral imperative to impose on any individual the least suffering necessary to achieve the specified purposes of the criminal law. *See United States v. Martinez-Barragan*, 545 F.3d 894, 904 (10th Cir. 2008) (explaining that "district court must be guided by the parsimony

18

principle"). A lawful sentence is one that is "minimally sufficient" to fulfill this purpose. *See United States v. Kikamura*, 918 F.2d 1084, 1111 (3rd Cir. 1990).

Here, even the government conceded that a sentence less than that called for by the guidelines sufficiently accomplished the goals of sentencing. Considering the nature and circumstances of the offense, and the history and characteristics of Mr. Torres, none of the statutory objectives of sentencing supports such a lengthy term in prison.

## CONCLUSION

This Court should vacate Mr. Torres's sentence because it is substantively unreasonable and remand his case for resentencing.

## STATEMENT AS TO ORAL ARGUMENT

Oral argument is not requested.

Respectfully submitted,

RAYMOND P. MOORE
Federal Public Defender

s/ Veronica S. Rossman
Assistant Federal Public Defender (Digital)
VERONICA S. ROSSMAN
633 - 17th Street, Suite 1000
Denver, Colorado 80202
(303) 294-7002
Email Address: COX_10ECF@fd.org
Veronica_Rossman@fd.org

19

# CERTIFICATE OF COMPLIANCE

**Section 1.  Word count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains ____4,018____ words.

Complete one of the following:

☒   I relied on my word processor to obtain the count and it is Corel WordPerfect X5:

☐ I counted five characters per word, counting all characters including citations and numerals.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


s/   Veronica S. Rossman
VERONICA S. ROSSMAN
Assistant Federal Public Defender (Digital)

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing

## APPELLANT'S OPENING BRIEF

(1)     all required privacy redactions have been made;

(2)     if required to file additional hard copies, that the ECF submission is, with the exception of any redactions, an exact copy of those hard copies; and

(3)     the ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program Symantec AntiVirus Corporate Edition version 12.1.1000.157, Virus Definition File Dated: Tuesday, August 14, 2012 r25, and, according to the program is free of viruses.

s/ Veronica S. Rossman
VERONICA S. ROSSMAN
Assistant Federal Public Defender

# CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2012, I electronically filed the foregoing **APPELLANT'S OPENING BRIEF** using the CM/ECF system, which will send notification of this filing to the following e-mail address:

Andrew Vogt, AUSA
andrew.vogt@usdoj.gov
usaco.ecfappellate@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following in the manner indicated (mail, hand-delivery, etc.):

Javier Torres          (via Mail)
Reg. No. 38088-013
c/o Dalby CI
805 North Avenue F
Post, TX    79356

s/ Laura Akin
Laura Akin, Legal Secretary